## S. S. McCONNELL, Receiver, v. R. B. McBROOM, et al.

### ·Middle Section. October 10, 1925.

No petition for Certiorari was filed.

1. **Parties. All the holders of legal title must be made parties in suit to set aside conveyance.**
   In a suit to set aside the conveyance of real estate because of fraud, the holders of deeds of trust and the trustees of such deeds must be made parties in order that they may assert their rights in the premises and that the purchaser at the court sale may get good title, and the property bring a fair price.

2. **Appeal and error. When all the owners of legal title not made parties in a suit to set aside conveyance case reversed for trial de novo.**
   In a suit to set aside conveyance of real estate because of fraud where the record showed a number of deeds of trust and none of the holders or the trustees were made parties the case was reversed and remanded for trial de novo after proper parties joined.

3. **Costs. Clerk's cost may be disallowed where the transcript of Record not prepared in accordance with the Rules of the Court.**
   The appellate court may disallow the clerk's costs where the transcript of the record is disarranged, and not in accordance with the rules of the appellate court.

Appeal from Chancery Court, Cannon County; Hon. W. R. Officer, Chancellor.

Reversed and remanded.

Hoyt Stewart, of Murfreesboro, for appellant, McConnell.

S. S. Brown, and Jesse Davenport, of Woodbury, for appellees, McBroom, et al.

CROWNOVER, J.   This was a suit to set aside certain fraudulent conveyances and to subject the property to the payment of certain notes due the First State Bank of Woodbury, by defendant R. B. McBroom and others.   Writs of attachment and injunction were issued and the property was impounded.

The bill alleged that the complainant had been regularly appointed receiver of the First State Bank of Woodbury, by the chancery court on August 10, 1923, in another cause pending in the chancery court, wherein said bank had been decreed to be insolvent, and that said receiver was duly authorized to bring this suit.

That the defendant R. B. McBroom, as co-maker with others, owed said bank several notes aggregating approximately $19,446.07, together with interest, attorney's fees and cost of collection, and that some of said notes had been re-discounted to the Fourth and First National Bank of Nashville, and some re-discounted to the War Finance Corporation at Chattanooga, Tennessee, and that some of the smaller notes had been retained by the First State Bank of Woodbury, and that said bank was liable as indorser on all of said notes to the respective banks.   The bill was filed in behalf of the said First State Bank and for the use of the other two banks.

That on September 19, 1923, the defendant R. B. McBroom, while owing said notes conveyed one tract of land to his daughter Mrs. Lizzie McMillin, for the recited consideration of $12,000, to be paid by the assumption of certain notes, and indebtedness payable to other parties.

That on October 3, 1923, defendant R. B. McBroom, while thus indebted to complainant conveyed another tract of land to S. J. Paschall for the recited consideration of $7,600 to be paid by the assumption of certain indebtedness to other parties.

That on August 31, 1923, the defendants R. B. McBroom, and his wife and son T. J. McBroom, Jr. conveyed another tract of land to defendant G. S. Smith for the recited consideration of $10,000 to be paid by the assumption of a $6,000 mortgage and the execution of two notes for the balance, one of which notes was transferred to his said daughter, Mrs. McMillin, and the other was alleged to have been paid.

The bill further alleged that defendant R. B. McBroom, and B. F. Wood, who has since died, purchased another tract of land from W. W. Gray, and later sold it to R. H. Bryson, for the recited consideration of $8,000, for which Bryson executed his notes to defendant R. B. McBroom, and that said notes were attempted

to be transferred to Gray, who refused to accept them. That said conveyances were not recorded until in October, 1923.

Said conveyances are attacked as fraudulent, and it is alleged that they were made for the purpose of hindering and defrauding the defendants' creditors and especially the complainant. Said property was impounded and it is sought to subject the same to the satisfaction of said indebtedness.

Several badges of fraud are alleged, such as, that said conveyances were made to his relatives, upon the recited consideration of debts that were fictitious, and that the defendant McBroom was permitted to retain possession of the property, all of which is more fully set out in the bill.

The defendants answered, and denied all fraud, and set up explanations of the different transactions.

Several depositions were taken and at the hearing they were read to the chancellor who decreed that complainant was entitled to a decree for the amounts of the respective notes, but declined to give complainant any other relief, and the bill was dismissed in so far as it sought to set aside the said conveyances as fraudulent. The complainant excepted, appealed to this court and has assigned several errors.

However, there is a preliminary question that must be settled before we can consider the assignment of errors. The record shows that this case is in such condition that we cannot pass a final decree. The pleadings and the record show that the legal title of the property is outstanding in other parties.

The record shows that the Paschall tract had previously been mortgaged to the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, for the sum of $4,000, and that a balance of $1,500 and interest remained due and unpaid.

The record further shows that a portion of the tract conveyed to Lizzie McMillin is incumbered by the above mortgage to the Northwestern Mutual Life Insurance Company, but there is nothing in the record to show which portion is covered by said mortage.

The record further shows that the tract conveyed to G. S. Smith had been previously mortgaged to the Louisville State Bank for $6,000, which was assumed by G. S. Smith and is still unpaid.

The record further shows that the T. J. McBroom tract had been previously mortaged for $3.500, to the Union Central Life Insurance Company, which is still outstanding and unpaid.

The record further shows that the Gray tract conveyed to R. H. Bryson was purchased by R. B. McBroom and B. F. Wood, who later conveyed the same to R. H. Bryson and that the notes were executed to R. B. McBroom and to B. F. Wood. Said B. F. Wood later died, and his estate has not been made a party to this proceed-

ing. None of these Insurance Companies or the bank, that hold the mortgages, was made parties to this cause, and they are not before the court. The bill ignores their interest and seeks to impound and subject the property to the payment of said indebtness.

It has been repeatedly held by our Supreme Court that the holders of the legal title must be made parties in suits of this kind, so that they may assert their rights in the premises, and that the purchaser at the court sale may get a good title, and that the property may bring a fair price. See King v. Patterson, 129 Tenn., 1; Wilson v. Zion Church, 138 Tenn., 398; Lane v. Marshall, 48 Tenn., 30; Gibson Suits in Chancery (2 Ed.), Sec. 882.

In the case of Wilson v. Zion Church, supra, the holder of the note had sued in the chancery court for a decree and had later filed an amended bill alleging that a deed of trust had previously been executed to certain mortgagees or trustees, but no process had been issued or served on the trustees and no pleadings had been filed, nor pro confesso taken against them. The amended bill alleged that the mortgage had in reality been satisfied and asked that it be so decreed. But the Supreme Court held that any decree to be effective and binding on the property of that association must take into account the interest of the mortgagees, and that the court could not deal with the land unless they were before the court; hence, that court reversed and remanded the case.

It results that we can neither consider the assignment of errors nor the case upon its merits, hence the decree of the chancellor is reversed and the cause is remanded to the chancery court of Cannon county so that the holders of the legal title, said Insurance Companies and said bank and their trustees (in the event the property is conveyed to trustees) be made parties to this suit by the issuance and service of process or by publication as required by law, and that the cause then be retried de novo.

The record is poorly arranged. The decree is placed in the middle of the transcript instead of being placed at the end. The motions, petitions and affidavits, are not placed in their chronological order. A part of the transcript is made of carbon copies and is hard to read. The record does not show for whom many of the witnesses testified and the matter is left to speculation. For these reasons (except the last) one-third of the clerk and master's cost for making the transcript of the record is disallowed.

The cost of the appeal is adjudged against appellant and surety on the appeal bond, for which execution may issue. The cost of the cause will await the final determination of the suit.

Judge Heiskell agrees that appellant cannot have the conveyances set aside upon this record for lack of parties, but thinks that complainant should have asked leave to amend his bill in order to

make new parties, and that in the present state of the record the case should be affirmed; and, if the complainant asks to have the case remanded for the purpose of amendment this might be done. Otherwise, complainant can file another bill with proper parties. Hence, he thinks the decree of the chancellor should be affirmed and the bill dismissed without prejudice.

Faw, P. J., concurs.· Heiskell, J., dissents in part.